DOMINICK J. FIORENZA,

                Plaintiff,

v.                                                     1:16-CV-1255
                                                                   (GTS)

COMMISSIONER OF SOCIAL SECURITY,

                Defendant.
_____

APPEARANCES:                                       OF COUNSEL:

OFFICE OF PETER M. MARGOLIUS           PETER M. MARGOLIUS, ESQ.
  Counsel for Plaintiff
7 Howard Street
Catskill, NY 12414

U.S. SOCIAL SECURITY ADMIN.               KATHRYN S. POLLACK, ESQ.
OFFICE OF REG'L GEN. COUNSEL – REGION II
  Counsel for Defendant
26 Federal Plaza, Room 3904
New York, NY 10278

GLENN T. SUDDABY, Chief United States District Judge

## **DECISION and ORDER**

Currently before the Court, in this Social Security action filed by Dominick J. Fiorenza ("Plaintiff") against the Commissioner of Social Security ("Defendant" or "the Commissioner") pursuant to 42 U.S.C. § 405(g), are Plaintiff's motion for judgment on the pleadings and Defendant's motion for judgment on the pleadings. (Dkt. Nos. 9, 12.) For the reasons set forth below, Plaintiff's motion for judgment on the pleadings is denied, and Defendant's motion for judgment on the pleadings is granted. The Commissioner's decision denying Plaintiff's disability benefits is affirmed, and Plaintiff's Complaint is dismissed.

I.      RELEVANT BACKGROUND

   A.      Factual Background

Plaintiff was born in 1958, making him 54 years old at the alleged onset date and 57 years old at the date of the ALJ's decision. Plaintiff reported obtaining multiple advanced degrees as well as a paralegal diploma. Plaintiff has past work as an automobile and recreational vehicle salesperson. Generally, Plaintiff alleges disability due to mental health, anxiety, depression, and pelvic instability.

   B.      Procedural History

Plaintiff applied for Disability Insurance Benefits on April 29, 2013, alleging disability beginning July 26, 2012. Plaintiff's application was initially denied on August 30, 2013, after which he timely requested a hearing before an Administrative Law Judge ("ALJ"). Plaintiff appeared at a hearing before ALJ Dale Black-Pennington on November 5, 2014. On January 20, 2015, the ALJ issued a written decision finding Plaintiff was not disabled under the Social Security Act. (T. 31-42.)[1] On August 16, 2016, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. (T. 6-8.)

   C.      The ALJ's Decision

Generally, in her decision, the ALJ made the following seven findings of fact and conclusions of law. (T. 33-41.) First, the ALJ found Plaintiff was insured for benefits under Title II until December 31, 2017. (T. 33.) Second, the ALJ found that Plaintiff has not engaged in substantial gainful activity since the alleged onset date. (*Id*.) Third, the ALJ found that

---

[1] The Administrative Transcript is found at Dkt. No. 8. Citations to the Administrative Transcript will be referenced as "T." and the Bates-stamped page numbers as set forth therein will be used rather than the page numbers assigned by the Court's CM/ECF electronic filing system.

Plaintiff's anxiety, depression, and frontal lobe disorder are severe impairments, while Plaintiff's back and pelvic symptoms not medically determinable impairments. (T. 33-34.) Fourth, the ALJ found that Plaintiff's severe impairments do not meet or medically equal one of the listed impairments in 20 C.F.R. § 404, Subpart P, App. 1 (the "Listings"). (T. 35-36.) Specifically, the ALJ considered Listings 12.02 (organic mental disorders), 12.04 (affective disorders), and 12.06 (anxiety-related disorders). (*Id*.) Fifth, the ALJ found that Plaintiff has the residual functional capacity ("RFC") to perform

> the full range of work at all exertional levels but with the following nonexertional limitations: able to perform simple routine tasks; able to follow and understand simple instructions and directions; able to occasionally manage change to workplace tasks or environment; able to learn new tasks and perform complex tasks with occasional supervision; requires a fixed schedule; able to make simple work related decisions; able to have superficial and transactional contact with co-workers and the general public.

(T. 37.) Sixth, the ALJ found that Plaintiff is unable to perform his past work with the limitations in the above RFC. (T. 40.) Seventh, the ALJ found that Plaintiff remains able to perform a significant number of other jobs in the national economy, such as machine operator, cleaner/housekeeper, and kitchen helper. (T. 41.) The ALJ therefore concluded that Plaintiff is not disabled.

### D. The Parties' Briefings on Their Cross-Motions

Generally, Plaintiff makes five arguments in support of his motion for judgment on the pleadings. First, Plaintiff argues that the ALJ failed to weigh opinion statements from treating physician Jeffery Corbin, M.D., that were contained within Dr. Corbin's treatment notes. (Dkt. No. 9, at 3-5 [Pl. Mem. of Law].)

Second, Plaintiff argues that the ALJ erred in affording lesser weight to an opinion from neuropsychologist Kristin Talka, Ph.D. (Dkt. No. 9, at 5-6 [Pl. Mem. of Law].)

Third, Plaintiff argues that the RFC finding is not supported by substantial evidence due to the ALJ's failure to afford proper weight to the opinion evidence. (Dkt. No. 9, at 6 [Pl. Mem. of Law].)

Fourth, Plaintiff argues that the ALJ erred in relying on the opinion of an examining source who did not have the opportunity to review the entire record. (Dkt. No. 9, at 6-7 [Pl. Mem. of Law].)

Fifth, Plaintiff argues that the adverse credibility finding is not supported by substantial evidence. (Dkt. No. 9, at 6-14 [Pl. Mem. of Law].) More specifically, Plaintiff argues that his alleged symptoms are well-documented by the medical evidence and that the ALJ ignored evidence, including a psychological evaluation from Walter Kendall, Ph.D., and Plaintiff's personal journal. (*Id.*)

Generally, Defendant makes two arguments in support of her motion for judgment on the pleadings. First, in response to Plaintiff's first, second, third, and fourth arguments, Defendant argues that the RFC finding is supported by substantial evidence. (Dkt. No. 12, at 19-23 [Def. Mem. of Law].) Defendant argues that the ALJ properly relied on the opinions of the treating, examining, and non-examining physicians in making this assessment. (Dkt. No. 12, at 19-20 [Def. Mem. of Law].) Defendant further argues that the record does not contain a medical statement from Dr. Corbin that would constitute a functional opinion, and that the ALJ nonetheless considered Dr. Corbin's records where the statements Plaintiff cites are found. (Dkt. No. 12, at 20-21 [Def. Mem. of Law].) Defendant also argues that Plaintiff's arguments regarding Dr. Talka's opinion are misplaced because Dr. Talka was not a treating source and the

ALJ in fact afforded her opinion significant weight. (Dkt. No. 12, at 21-22 [Def. Mem. of Law].) Defendant lastly argues that the ALJ was permitted to rely on the opinion of an examining source who had not reviewed other evidence, and to rely in part on a non-examining source's opinion even where that source did not review all of the evidence so long as the opinions are consistent with the evidence as a whole. (Dkt. No. 12, at 23 [Def. Mem. of Law].)

Second, in response to Plaintiff's fifth argument, Defendant argues that the credibility finding is supported by substantial evidence because the ALJ appropriately considered whether the objective medical evidence corroborated Plaintiff's alleged symptoms and limitations, and whether Plaintiff's reported daily activities were consistent with his alleged level of limitation. (Dkt. No. 12, at 23-25 [Def. Mem. of Law].)

## II. RELEVANT LEGAL STANDARD

### A. Standard of Review

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. 42 U.S.C. § 405(g); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will be reversed only if the correct legal standards were not applied, or it was not supported by substantial evidence. *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *accord Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983), *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979). "Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might

accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

### B.     Standard to Determine Disability

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act. 20 C.F.R. §§ 404.1520, 416.920. The Supreme Court has recognized the validity of this sequential evaluation process. *Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987). The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an

> impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform. Under the cases previously discussed, the claimant bears the burden of the proof as to the first four steps, while the [Commissioner] must prove the final one.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982); *accord McIntyre v. Colvin,* 758 F.3d 146, 150 (2d Cir. 2014). "If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further." *Barnhart v. Thompson,* 540 U.S. 20, 24 (2003).

## III. ANALYSIS

### A. Whether the ALJ Properly Weighed the Opinion Evidence

After careful consideration, the Court answers this question in the affirmative for the reasons stated in Defendant's memorandum of law. (Dkt. No. 12, at 19-23 [Def. Mem. of Law].) To those reasons, this Court adds the following analysis.

The Second Circuit has long recognized the 'treating physician rule' set out in 20 C.F.R. § 404.1527(c). "'[T]he opinion of a claimant's treating physician as to the nature and severity of the impairment is given 'controlling weight' so long as it is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record.'" *Greek v. Colvin*, 802 F.3d 370, 375 (2d Cir. 2015) (quoting *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008)). However, there are situations

7

where the treating physician's opinion is not entitled to controlling weight, in which case the ALJ must "explicitly consider, *inter alia*: (1) the frequency, length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and (4) whether the physician is a specialist.'" *Greek*, 802 F.3d at 375 (quoting *Selian v. Astrue*, 708 F.3d 409, 418 (2d Cir. 2013)). However, "[w]here an ALJ's reasoning and adherence to the Regulations is clear, she is not required to explicitly go through each and every factor of the Regulation." *Blinkovitch v. Comm'r of Soc. Sec.*, No. 3:15-CV-1196, 2017 WL 782979, at *4 (N.D.N.Y. Jan. 23, 2017), report and recommendation adopted by 2017 WL 782901 (N.D.N.Y. Feb. 28, 2017)) (citing *Atwater v. Astrue*, 512 F. App'x 67, 70 (2d Cir. 2013)). After considering these factors, "the ALJ must 'comprehensively set forth [his] reasons for the weight assigned to a treating physician's opinion.'" *Greek*, 802 F.3d at 375 (quoting *Burgess*, 537 F.3d at 129). "The failure to provide 'good reasons for not crediting the opinion of a claimant's treating physician is a ground for remand.'" *Greek*, 802 F.3d at 375 (quoting *Burgess*, 537 F.3d at 129-30).

The factors for considering opinions from non-treating medical sources are the same as those for assessing treating sources, with the consideration of whether the source examined the claimant replacing the consideration of the treatment relationship between the source and the claimant. *See* 20 C.F.R. § 404.1527(c)(1)-(6). Additionally, when weighing opinions from sources who are not considered "medically acceptable sources"[2] under the regulations, the ALJ must consider the same factors as used for evaluating opinions from medically acceptable

---

[2] Medically acceptable sources are noted to include the following: licensed physicians; licensed or certified psychologists; licensed optometrists; licensed podiatrists; and qualified speech-language pathologists. SSR 06-03p, 2006 WL 2329939 (Aug. 9, 2006).

sources. *Saxon v. Astrue*, 781 F. Supp. 2d 92, 104 (N.D.N.Y. 2011) (citing *Canales v. Comm'r of Soc. Sec.*, 698 F. Supp. 2d 335, 344 (E.D.N.Y. 2010)); SSR 06-03p, 2006 WL 2329939.

### 1. Dr. Corbin

Plaintiff argues that the ALJ erred by "ignoring the claimant's treating physician [Dr. Corbin] and by failing to provide any rationale as to why [his] opinion was given no weight." (Dkt. No. 9, at 3-4 [Pl. Mem. of Law].) Plaintiff cites to various statements in Dr. Corbin's treatment notes, such as that Plaintiff's symptoms interfered with his daily functioning, that Plaintiff displayed difficulty ignoring irrelevant stimuli on some examinations, and that Plaintiff on one occasion reported he was struggling with worsening mood and hopelessness and had lost seven jobs in seven years due to his history of sex offenses and poor performance. (Dkt. No. 9, at 4 [Pl. Mem. of Law].)

Plaintiff's arguments related to a failure to weigh any opinions from Dr. Corbin fail because there is no indication Dr. Corbin actually provided anything that would qualify as a medical opinion. The statements identified by Plaintiff in his memorandum consist of Plaintiff's subjective reports and objective examination observations, not statements by Dr. Corbin as to how Plaintiff's symptoms would impact his work-related functioning. As Defendant correctly notes, a medical opinion is primarily a statement that reflects a physician's judgment about what a claimant remains able to do despite his impairments. (Dkt. No. 12, at 20-21 [Def. Mem. of Law]); *see also* 20 C.F.R. § 404.1527(a)(2). Plaintiff does not explain how any of the statements he cited constitute an expression of Dr. Cobin's medical judgment as to the effect that Plaintiff's impairments would have on his ability to work, and the only statement that has to do with work was Plaintiff's own report that he had lost jobs due a combination of poor performance and his sex offender status. However, the mere fact that Dr. Corbin included Plaintiff's subjective report

9

in the treatment notes does not mean that Dr. Corbin was offering an opinion that Plaintiff was unable to work due to poor performance as a result of his impairments. Contrary to Plaintiff's assertions, the record does not contain a medical opinion from Dr. Corbin that the ALJ would have been required to weigh according to the specifications of the treating physician rule.

Plaintiff also argues in a cursory fashion that the ALJ erred in failing "to even mention this treating source in the decision," arguing that the failure to mention Dr. Corbin specifically showed that the ALJ ignored Dr. Corbin's treatment of Plaintiff. (Dkt. No. 9, at 4-5 [Pl. Mem. of Law].) However, this Court and the Second Circuit have explicitly rejected the proposition that an ALJ's failure to mention specific evidence indicates that the ALJ ignored that evidence. *See Barringer v. Comm'r of Soc. Sec.*, 358 F. Supp. 2d 67, 78 (N.D.N.Y. 2005) ("Moreover, '[a]lthough required to develop the record fully and fairly, the ALJ is not required to discuss all the evidence submitted, and [his] failure to cite to specific evidence does not indicate that it was not considered.'") (quoting *Craig v. Apfel*, 212 F.3d 433, 436 (8th Cir. 2000)) (alteration in original); *see also Brault v. Comm'r of Soc. Sec.*, 683 F.3d 443, 448 (2d Cir. 2012) (noting that "'[a]lthough required to develop the record fully and fairly, an ALJ is not required to discuss every piece of evidence submitted'" and that "'[a]n ALJ's failure to cite specific evidence does not indicate that such evidence was not considered.'") (quoting *Black v. Apfel*, 143 F.3d 383, 386 (8th Cir. 1998)). Rather, the ALJ is not required to discuss every piece of evidence in the record, and "[w]here 'the evidence of record permits [the court] to glean the rationale of an ALJ's decision, [the ALJ is not required to explain] why he considered particular evidence unpersuasive or insufficient to lead him to a conclusion of disability.'" *Barringer*, 358 F. Supp. 2d at 78 (quoting *Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983)) (alterations in original).

Although Dr. Corbin did note some symptoms related to Plaintiff's impairments on examinations, such as mildly impaired recent memory (T. 328, 338, 390, 436, 439) and difficulty ignoring relevant stimuli (T. 326, 328, 338, 390), the majority of the rest of his mental status findings were consistently normal and unremarkable. Additionally, on November 8, 2013, Dr. Corbin noted that Plaintiff had not been taking his medications for over a month and was not experiencing any significant worsening, and that Plaintiff indicated he wanted to remain off medications to see how he would do. (T. 339.) When Plaintiff did resume medications in 2014, Dr. Corbin noted improvement in Plaintiff's symptoms, including his attention and concentration on exam. (T. 384, 436, 439.) Because Dr. Corbin's treatment notes do not contain evidence that would conflict with the ALJ's overall conclusions regarding the RFC and work-related functioning, there was no compelling reason as to why the ALJ would have needed to discuss those treatment notes in greater detail in the written decision. Rather, this Court is able to glean the rationale of the ALJ's decision based on the weight she afforded to the opinion evidence and her discussion of other evidence, all of which shows her findings were supported by substantial evidence.

Because Dr. Corbin did not provide a medical opinion and because the ALJ was not required to specifically discuss Dr. Corbin's treatment notes in the decision, the ALJ did not commit any errors in regard to her consideration of the evidence from Dr. Corbin. Remand is not warranted on this basis.

### 2. Dr. Talka

Plaintiff also argues that the ALJ failed to afford greater weight to the opinion from Dr. Talka, asserting that the ALJ afforded her opinion "lesser weight" without any explanation.

11

(Dkt. No. 9, at 5-6 [Pl. Mem. of Law].) Plaintiff's argument ignores the entire context of the ALJ's discussion of the weight afforded to Dr. Talka's opinion.

First, the ALJ did not simply afford "lesser" weight to Dr. Talka's opinion as Plaintiff asserts. Rather, the ALJ noted that she afforded Dr. Talka's opinion "significant though slightly lesser weight" than was afforded to the opinion from consultative examiner Dr. Rigberg. (T. 39.) This statement does not imply that the ALJ essentially rejected Dr. Talka's opinion as Plaintiff appears to suggest, but rather that the ALJ found Dr. Rigberg's opinion slightly more compelling than the opinions from Dr. Talka, the non-examining State Agency psychological consultant, and Plaintiff's therapist David Fleming, M.A., all of whose opinions support the RFC.

Second, contrary to Plaintiff's argument, the ALJ did provide a detailed explanation as to why he relied on Dr. Talka's opinion to a lesser extent than other opinions. The ALJ noted that Dr. Talka's opinion "does not specifically address the details of the claimant's work related limitations of function, but her observations, opinions, and examination findings [] fundamentally support the more detailed opinions such as those of Dr. Rigberg and Dr. Dambrocia." (T. 40.)

Nor has Plaintiff suggested how greater reliance on Dr. Talka's opinion would have resulted in greater limitations than the ALJ included in the RFC. Plaintiff quotes selected portions of Dr. Talka's findings but fails to explain how these discrete testing results suggest greater limitations when considered in the full context of her report. In particular, Plaintiff's argument ignores that Dr. Talka qualified nearly all the assessed results by noting they needed to be interpreted with care due to testing that suggested Plaintiff may not have provided maximal effort, even noting that she could not determine conclusively whether results were based on a cognitive deficit or due to poor effort or motivation on testing. (T. 375-79.) Overall, Dr. Talka

concluded that "vocational programs that provide structure and accountability in conjunction with continued mental health treatment may allow [Plaintiff] to be successful in his vocational pursuits if he so chooses to continue," suggesting that Dr. Talka did not conclude Plaintiff was unable to work as a result of his impairments. (T. 380.) Given the lack of certainty in Dr. Talka's findings due to the questionable effort Plaintiff expended on the testing and the absence of a more specific functional opinion, the ALJ provided proper reasons for choosing to rely to a greater extent on more specific opinions from other sources.

Because the ALJ provided reasons consistent with the evidence as to why she relied on Dr. Talka's opinion to a lesser extent than other opinions in the record, there was nothing erroneous in her analysis of this opinion. Remand is not warranted on this basis.

### 3. Dr. Rigberg

Plaintiff also argues that the ALJ erroneously relied on the opinion from consultative examiner Dr. Rigberg, arguing that Dr. Rigberg's opinion was not entitled to greater weight than the treating sources because he did not review the complete case record when rendering his opinion. (Dkt. No. 9, at 6-7 [Pl. Mem. of Law].) However, Plaintiff's argument is based on an erroneous application of the Agency's policies and is not persuasive.

In his argument, Plaintiff confuses the analysis of a non-examining State Agency medical or psychological consultant with that of an examining source. The ruling that Plaintiff cites to as support for his argument, SSR 96-6p, addresses how the opinions of non-examining State Agency medical or psychological consultants are to be considered, a fact which is clear from how these sources are distinguished from "treating and examining sources" within the wording of the ruling. SSR 96-6p, 1996 WL 374180 (July 2, 1996). However, Dr. Rigberg was not a non-examining State Agency psychological consultant, but rather a consultative examiner who

13

had the opportunity to conduct a personal, detailed examination of Plaintiff prior to rendering his opinion. (T. 319-22.) Plaintiff cites to no authority that an examining source must have reviewed a claimant's medical records in order for that source's opinion to be entitled to great weight. Rather, this Court has recognized that a consultative examiner can be entitled to great weight even where that source has not reviewed any of the claimant's medical records because his opinion is based on his own examination of the claimant. *See Pennock v. Comm'r of Soc. Sec.*, No. 7:14-CV-1524, 2016 WL 1128126, at *6 (N.D.N.Y. Feb. 23, 2016) (noting that "[i]t is well settled that an ALJ is entitled to rely upon the opinions of both examining and non-examining State agency medical consultants," and that "the elements of a complete consultative examination do not require that the examiner review all, or any, medical evidence in the record") (citing 20 C.F.R. §§ 404.1512(b)(6), 404.1513(c), 404.1519n(b)-(c), 404.1527; *Harper v. Comm'r of Soc. Sec.*, No. 08-CV-3803, 2010 WL 5477758, at *4 (E.D.N.Y. Dec. 30, 2010)). Consequently, Plaintiff's argument that Dr. Rigberg's opinion was deficient due to his inability to review all of the medical records is not legally tenable.

On July 25, 2013, Dr. Rigberg observed that Plaintiff was cooperative, alert, and oriented with adequate social skills, adequate grooming and hygiene, normal posture and motor behavior, appropriately focused eye contact, coherent and goal directed thought process, depressed and anxious affect, dysthymic and anxious mood, intact attention and concentration, intact memory, average intellectual functioning, and fair insight and judgment. (T. 320-21.) Based on this examination and a consideration of Plaintiff's reports, Dr. Rigberg opined that Plaintiff had no-to-mild restrictions in maintaining attention and concentration for tasks and relating adequately with others, no-to-moderate restrictions in performing simple tasks independently or under supervision and maintaining a regular schedule and changes in routine, mild-to-moderate

14

restrictions in learning new tasks and making appropriate decisions, and a moderate restriction in performing complex tasks. (T. 322.)

This opinion is supported by Dr. Rigberg's own examination and by the other evidence in the record. As discussed previously, Dr. Corbin's notes showed little more than mild abnormalities on a consistent basis as well as improvement in attention and concentration when Plaintiff was taking medication. (T. 326, 328, 338, 384, 390, 436, 439.) On August 2, 2012, Zacharias Chasin, M.D., observed Plaintiff had a normal mood and affect despite not taking his medications recently. (T. 357-58.) On November 2, 2012, Dr. Chasin noted that he was stopping Plaintiff's prescription for Celexa because Plaintiff had discontinued taking it over a month previously and refused to restart it because he was doing well. (T. 355.) On May 1, 2013, Dr. Chasin noted depression and anxiety were stable, though Celexa and Risperdal were restarted. (T. 351.) On August 1, 2013, Plaintiff was observed with a normal mood and affect. (T. 347.) Additionally, therapist Mr. Fleming provided an opinion on November 10, 2014, in which he opined Plaintiff had no more than moderate restrictions in his abilities to out carry out instructions, mild restrictions in social functioning, and moderate restrictions in his ability to respond appropriately to usual work situations and changes in a routine work setting. (T. 464-65.) Likewise, non-examining State Agency psychological consultant Dr. Dambrocia opined Plaintiff was able to understand and remember instructions and sustain attention and concentration for tasks with the ability to handle brief and superficial contact with others and adequately handle ordinary levels of supervision in a customary work setting. (T. 100.)

On February 1, 2013, Dr. Chasin noted that Plaintiff's depression and anxiety were stable without medication. (T. 353.) Testing by Arthur Ritmeester, B.A. and Walter Kendall, Ph.D., produced intellectual functioning data that was not interpretable due to significant discrepancies

15

in the results. (T. 428.) Mr. Ritmeester and Dr. Kendall did note that while Plaintiff appeared to struggle to stay on tasks involving visual-spatial reasoning and keeping information in his short-term memory, he declined to take breaks during tasks, appeared to rush near the end portions of the tasks, and appeared to fully attend to the tasks. (*Id*.) Mr. Ritmeester and Dr. Kendall noted that card-sorting testing suggested impairment in executive functioning, but also indicated that Plaintiff should be referred to a neuropsychologist for further testing. (T. 430, 432.) Dr. Talka performed the requested neuropsychological testing over various dates in May 2013, the results of which were fairly inconclusive due to the suggestion that Plaintiff may not have provided adequate effort on the testing. (T. 371-80.) The treatment evidence as a whole therefore provides substantial support for the ALJ's choice to place the greatest reliance on Dr. Rigberg's opinion when assessing Plaintiff's mental functioning.

For the above reasons, the ALJ's findings regarding the opinion evidence and the RFC are supported by substantial evidence. Remand is not warranted on this basis.

### B. Whether the Credibility Finding is Supported By Substantial Evidence

After careful consideration, the Court answers this question in the affirmative for the reasons stated in Defendant's memorandum of law. (Dkt. No. 12, at 23-25 [Def. Mem. of Law].) To those reasons, this Court adds the following analysis.

In determining whether a claimant is disabled, the ALJ must also make a determination as to the credibility of the claimant's allegations. "'An administrative law judge may properly reject claims of severe, disabling pain after weighing the objective medical evidence in the record, the claimant's demeanor, and other indicia of credibility, but must set forth his or her reasons with sufficient specificity to enable us to decide whether the determination is supported by substantial evidence.'" *Schlichting v. Astrue*, 11 F. Supp. 3d 190, 205 (N.D.N.Y. 2012)

16

(quoting *Lewis v. Apfel*, 62 F. Supp. 2d 648, 651 (N.D.N.Y. 1999)). The Second Circuit recognizes that "'[i]t is the function of the [Commissioner], not [reviewing courts], to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant,'" and that "[i]f there is substantial evidence in the record to support the Commissioner's findings, 'the court must uphold the ALJ's decision to discount a claimant's subjective complaints of pain.'" *Schlichting*, 11 F. Supp. 3d at 206 (quoting *Carroll v. Sec'y of Health and Human Servs.*, 705 F.2d 638, 642 (2d Cir. 1983); *Aponte v. Sec'y, Dep't of Health and Human Servs.*, 728 F.2d 588, 591 (2d Cir. 1984)). Due to the fact that the ALJ has the benefit of directly observing a claimant's demeanor and "other indicia of credibility," the ALJ's credibility assessment is generally entitled to deference. *Weather v. Astrue*, 32 F. Supp. 3d 363, 381 (N.D.N.Y. 2012) (citing *Tejada v. Apfel*, 167 F.3d 770, 776 (2d Cir. 1999)).

Plaintiff argues that the ALJ's credibility finding was erroneous because his alleged symptoms and restrictions were well-supported by the medical evidence and because the ALJ ignored certain evidence. (Dkt. No. 9, at 6-14 [Pl. Mem. of Law].) These arguments are not persuasive.

In terms of Plaintiff's assertion that his allegations are well-supported by the evidence, this is not consistent with the medical treatment, which showed overall mild-to-moderate symptoms, as already discussed in detail in the previous sections of this Decision and Order. The significant range of limitations he alleged, particularly related to remembering details, attention, and concentration, are not supported by the medical record as a whole.

Turning to Plaintiff's assertions that the ALJ ignored certain evidence when assessing credibility, this argument is also not persuasive. Plaintiff argues that the ALJ ignored the evaluation from Mr. Ritmeester and Dr. Kendall from May 2013, yet, as already discussed, the

17

mere fact that the ALJ did not specifically discuss this evaluation does not suggest the ALJ failed to consider it. *See Barringer*, 358 F. Supp. 2d at 78; *Brault*, 683 F.3d at 448. Additionally, Plaintiff fails to suggest what in this evaluation would render the ALJ's credibility determination unsupported. Although this evaluation did suggest a number of possible limitations Plaintiff might experience in the workplace based on his assessed profile, this evaluation did not include a concrete functional opinion but rather indicated the need for neuropsychological testing to assess specific domains of impairment. (T. 428-32.) However, the results of the intelligence testing were inconclusive. (T. 428.) Given that the ALJ provided specific reasons for the credibility determination and that no inference that the ALJ failed to consider this assessment can be drawn from her choice not to discuss it in the decision, Plaintiff has shown no reason why this evaluation undermines the credibility decision. Plaintiff also argues that the ALJ erred in ignoring the information in the journals Plaintiff provided. However, in addition to the fact that there was no evidence to show the ALJ failed to consider the journal evidence, Plaintiff also ignores that these journals consist entirely of Plaintiff's own subjective reports, which the ALJ appropriately rejected for being inconsistent with the other evidence in the record.

      The ALJ found that Plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms were not entirely credible because they were not supported by the objective medical evidence or opinion evidence and were inconsistent with Plaintiff's reported daily activities. (T. 38-40.) The lack of support from the medical and opinion evidence has already been extensively discussed in previous sections of this Decision and Order and such reason for finding Plaintiff not credible is supported by substantial evidence. In terms of Plaintiff's daily activities, the ALJ noted that Plaintiff reported to Dr. Rigberg that he was able to dress, bathe, groom himself, cook, clean, do laundry, shop, manage his own money, drive, and

take public transportation, as well as that Plaintiff testified at the hearing that he was able to drive, though he had anxiety when driving on highways and over bridges. (T. 35.) Plaintiff testified that he lived with three other people, took care of his own hygiene, did laundry daily, went grocery shopping, and did household chores. (T. 53-54, 70-72.) In a function report, Plaintiff reported he could care for his personal hygiene, prepare meals daily, go to the library, watch television, perform indoor household chores, drive a car, shop, handle money, and read. (T. 191-95.) The ALJ's consideration of the reported activities that were inconsistent with Plaintiff's alleged level of functioning was proper. *See Morris v. Comm'r of Soc. Sec.,* No. 12-CV-1795, 2014 WL 1451996, at *8 (N.D.N.Y. Apr. 14, 2014) ("The issue is not whether Plaintiff's limited ability to undertake normal daily activities demonstrates her ability to work. Rather, the issue is whether the ALJ properly discounted Plaintiff's testimony regarding her symptoms to the extent that it is inconsistent with other evidence.").

Because the ALJ properly considered all the evidence and provided clear reasons for concluding Plaintiff was not entirely credible, the credibility determination is supported by substantial evidence. Remand is not warranted on this basis.

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 9) is **DENIED**; and it is further

**ORDERED** that Defendant's motion for judgment on the pleadings (Dkt. No. 12) is **GRANTED**; and it is further

**ORDERED** that Defendant's decision denying Plaintiff disability benefits is **AFFIRMED**; and it is further

**ORDERED** that Plaintiff's Complaint (Dkt. No. 1) is **DISMISSED**.

Dated: October 4, 2017
       Syracuse, New York

_____
Hon. Glenn T. Suddaby
Chief U.S. District Judge